731 A.2d 972

**In re ADOPTION/GUARDIANSHIP NOS. 11387 AND 11388
in the Circuit Court for Montgomery County.**

**No. 56, Sept. Term, 1998.**

Court of Appeals of Maryland.

June 29, 1999.

Gina M. Serra, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

C.J. Messerschmidt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Attorney General, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

RAKER, Judge.

The issue we must decide in this case is whether a natural parent whose parental rights were terminated as a result of her failure to respond to a petition for guardianship is entitled to present evidence in a status hearing conducted pursuant to Maryland Code § 5–319 of the Family Law Article. We shall hold that a natural parent, who has not waived the right to notice of the status of his or her child(ren) provided by § 5–319(b) and who attends a hearing under § 5–319(f) to review that status, has a statutory right to participate in the hearing, and thus is entitled to present evidence.

I.

Petitioner, Clemy P., appeals from a proceeding of the Circuit Court for Montgomery County to review the guardian-

ship of her two biological children, ten-year old Stephon and eight-year old Alphonso. The circuit court had previously granted guardianship of the two boys to the Montgomery County Department of Health and Human Services (hereinafter "DHHS"),[1] including the right to consent to adoption or long-term care, based on the consent of the boys' father and Ms. P.'s failure to respond to DHHS's petition. As provided by statute, the court's decrees of guardianship, on October 20, 1993, terminated Petitioner's parental rights with respect to Stephon and Alphonso as of that date. *See* Maryland Code (1984, 1999 Repl.Vol.) Family Law Article, § 5–317(f)(1).[2] On December 1, 1995, in response to Petitioner's motion to set aside its two-year old decrees, the circuit court vacated the judgments of guardianship.

Clemy P's case was among the five cases considered by this Court in *In re Adoption No. 93321055*, 344 Md. 458, 687 A.2d 681, *cert. denied*, 520 U.S. 1267, 117 S.Ct. 2439, 138 L.Ed.2d 199 (1997). This Court reversed the circuit court's order vacating the guardianship decrees, thereby reinstating guardianship of Stephon and Alphonso to DHHS and reestablishing termination of Petitioner's parental rights. *See id.* at 496, 687 A.2d at 699. We held that a natural parent who fails to heed the warning within the show cause order and file a timely notice of objection is deemed by statute to have consented to the guardianship and, as a matter of law, lacks the power to revoke the statutorily deemed consent at any point thereafter. *Id.* at 480–86, 687 A.2d at 692–94. Moreover, "[s]uch a parent is entitled to no further notice of proceedings on the DSS petition [for guardianship] and has no further right to participate in the action." *Id.* at 486, 687 A.2d at 694–95. Nonethe-

---

**1.** For much of the pendency of this case, the Montgomery County Department of Health and Human Services was known as the Montgomery County Department of Social Services. Consequently, many, if not most of the references made to the agency within the record and prior appellate opinions in this case appear as the "Department of Social Services" or "DSS."

**2.** Unless otherwise specified, all subsequent statutory references shall be to Maryland Code (1984, 1999 Repl.Vol.) Family Law Article.

less, by way of a "caveat," we noted the possible relevance of § 5–319 to Petitioner's case and left open "[t]he issue of whether § 5–319(f) would allow the court to reopen or vacate an enrolled judgment of guardianship in the limited circumstances enumerated in the statute." *Id.* at 487, 687 A.2d at 695. Stated another way, we left open the question concerning delayed or disrupted adoptions as to whether the trial court was authorized to reinstate the rights of a natural parent who had previously consented to adoption.

Following upon the heels of our decision and caveat, Petitioner filed a "Request For Hearing Based Upon Delay in Adoption," citing § 5–319's directive to the court to conduct a review hearing, after guardianship has been granted, in certain situations in which there occurs a delay in placement for adoption, a disruption in placement for adoption, or a delay in entry of a final decree of adoption. *See* § 5–319(b) and (f).[3] In her pleadings, Petitioner asserted that a review hearing was required because the boys had been under the guardianship of DHHS for more than two years without a final decree of adoption having been entered and because there had been a disruption in the boys' placement for adoption without their being placed in another pre-adoptive home within 120 days, citing § 5–319(b)(3) and (b)(2), respectively.

On April 23, 1997, pursuant to Petitioner's request for a hearing, the circuit court held a § 5–319(f) review hearing. Petitioner appeared at the hearing, represented by the Public Defender. She asserted a statutory basis under § 5–319 to testify and present evidence. Although the trial court had allowed Petitioner to cross-examine DHHS's single witness, the social worker then assigned to the case, the court refused to permit Petitioner to testify or present other witnesses, ruling that Petitioner "simply has no standing in this matter any longer, except for provisions … where she is entitled to notice if the adoption is not completed or there has been a change in the adoption plan." At the conclusion of the hearing

---

**3.** The full text of § 5–319 is recited within our legal analysis, *infra* Part II.B.

the court determined that it was in the children's best interest to continue their placement by DHHS with the prospective adoptive parent, who by that point had relocated to Texas with the boys.

Petitioner noted a timely appeal to the Court of Special Appeals. That court affirmed, holding that because Petitioner did not have either a due process or statutory right to participate in the review hearing, the trial judge did not abuse his discretion by refusing Petitioner the right to testify or present witnesses. *In re Adoption No. 11387,* 120 Md.App. 566, 575–79, 707 A.2d 926, 930–32 (1998). We granted Ms. P.'s petition for writ of certiorari to consider whether the Court of Special Appeals erred in concluding that Petitioner was not entitled to participate in the hearing conducted pursuant to § 5–319 regarding the status of her children.

## II.

### A.

We first reiterate the principles of statutory construction that guide our decision. The cardinal rule of statutory interpretation is to ascertain and give effect to the intention of the Legislature. *Degren v. State,* 352 Md. 400, 417, 722 A.2d 887, 895 (1999); *Wesley Chapel v. Baltimore,* 347 Md. 125, 137, 699 A.2d 434, 440 (1997). "Where the statutory language is plain and free from ambiguity, and expresses a definite and simple meaning, courts do not normally look beyond the words of the statute itself to determine legislative intent." *Degren,* 352 Md. at 417, 722 A.2d at 895 (citing *Marriott Employees v. MVA,* 346 Md. 437, 445, 697 A.2d 455, 458 (1997) and other cases). When, however, "the words of the statute are susceptible to more than one meaning, it is necessary to consider their meaning and effect 'in light of the setting, the objectives and [the] purpose of the enactment.'" *Wesley Chapel,* 347 Md. at 137, 699 A.2d at 440 (quoting *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 75, 517 A.2d 730, 732 (1986) (alteration in original)). In accordance with this endeavor, we construe the statute as a whole and inter-

pret each of its provisions in the context of the entire statutory scheme. *Blondell v. Baltimore Police,* 341 Md. 680, 691, 672 A.2d 639, 645 (1996). With similar emphasis, this Court has stated:

> If the language alone does not provide sufficient information on the Legislature's intent, then courts will look to other sources to discern the Legislature's purpose.... Because the meanings of even common words may be context-dependent, ... we often proceed to consider other external manifestations of legislative intent, such as the amendment history of the statute, its relationship to prior and subsequent law, and its structure.

*Armstead v. State,* 342 Md. 38, 56, 673 A.2d 221, 229–230 (1996) (internal quotation marks and citations omitted). Finally, "[c]ommon sense must guide us in our interpretation of statutes, and 'we seek to avoid constructions that are illogical, unreasonable, or inconsistent with common sense.'" *Marriott Employees,* 346 Md. at 445, 697 A.2d at 459 (quoting *Frost v. State,* 336 Md. 125, 137, 647 A.2d 106, 112 (1994)).

### B.

 The statutory provision at the heart of the dispute in this case is § 5–319(b)'s requirement that a guardian with the right to consent to adoption give notice of the child(ren)'s status to the natural parent(s) in certain instances where there has been a delay in adoption after guardianship has been granted. Section 5–319 provides as follows:

**§ 5–319. Delay in adoption after guardianship granted.**

(a) *"Disrupted placement" defined.*—In this section, "disrupted placement" means the permanent removal of a child to be adopted from the prospective adoptive family or adopting individual by a child placement agency before the entry of a final decree of adoption.

(b) *In general.*—Except as provided in subsection (g) of this section, a guardian with the right to consent to adoption, including a guardian with the right to consent to adoption who was appointed without the consent of the

natural parents, shall file a written report with the court and give notice of the child's status to each natural parent of the child under the guardianship and to the child's court-appointed counsel if:

(1) a placement for adoption is not made within 9 months of the decree of guardianship;

(2) a placement for adoption is made within 9 months of the decree of guardianship, but there is a disrupted placement, and a new placement is not made within 120 days of the disrupted placement; or

(3) a final decree of adoption is not entered within 2 years after placement for adoption.

(c) *Mailing notice.*—The guardian shall mail the notice required by this section to each natural parent at the last address known to the guardian.

(d) *Waiver of notice.*—A natural parent may waive the right to notice under this section. The waiver shall appear expressly in:

(1) the natural parent's consent to the guardianship; and

(2) the decree of guardianship.

(e) *Report to court.*—The written report required by this section shall:

(1) be filed with the court; and

(2) state the reasons for delay in placement for adoption.

(f) *Hearing; orders.*—On receipt of the guardian's report under subsection (b) of this section, and every 12 months thereafter, the court:

(1) shall hold a hearing to review the progress which has been made toward the child's adoption and to review whether the child's current placement and circumstances are in the child's best interest; and

(2) shall then take whatever action the court considers appropriate in the child's best interest.

(g) *Long-term placement.*—(1) Further reports, notices to the natural parents, and hearings are not required if the court determines after a hearing that it is in the best interest of the child to remain with a specified family which agrees to the long-term placement.

(2) If the long-term placement is subsequently changed, the child is entitled to annual hearings under subsection (f) of this section.

(h) *Periodic progress reports.*—The court may require the guardian to file periodic written progress reports on the child's status, with recommendations for further supervision, treatment, or rehabilitation.

(i) *Jurisdiction of the equity court.*—If guardianship with the right to consent to adoption or long-term care short of adoption has been ordered by an equity court, the jurisdiction of the equity court over the child may continue until that individual reaches 21 years of age, unless terminated sooner.

As the core thesis of her present appeal, Petitioner argues that her right to notice of her children's status under § 5–319(b), in conjunction with her right to representation by the Public Defender in a review hearing under § 5–319(f), as provided by § 5–323(b)(2) and Maryland Code (1957, 1997 Repl.Vol.) Article 27A, § 4(b)(5), conferred party status upon her, and thus granted her the right to full participation in the hearing, including the right to present witnesses and testimony. In addition, § 5–319 implicitly afforded her the right to participate in the April 23, 1997 status hearing thereunder, based upon a number of reinforcing factors. First, the statute's requirement that Petitioner, and the boys' natural father, receive notice of their children's status distinguished them from any other persons, to whom no such right is allotted.[4] Second, the hearing was held in response to Petitioner's request for a hearing because of a delay in the adoption of her children after guardianship had been granted.[5] Lastly, the

---

**4.** The boys' natural father gave affirmative consent to the guardianship on June 28, 1993. His signed consent included an express non-waiver of his right to notice of the filing of the guardianship petition as well as a non-waiver of his right to notice under § 5–319.

**5.** Despite the seeming inconsistency of granting Petitioner's request to hold the hearing and then later ruling at that hearing that she had no

hearing was intended to review DHHS's progress toward adoption and to determine whether the boys' placement and circumstances at that time were in their best interest, with the distinct possibility that the court might find reunification of Petitioner with her children to be the appropriate course of action, a possibility this Court anticipated in the issuance of our "caveat," *In re Adoption No. 93321055,* 344 Md. 458, 487–88, 687 A.2d 681, 695 (1997).

Respondent counters that the language and legislative history of § 5–319 reveal a clear intent on the part of the General Assembly that the only affirmative right currently granted by the statute to Petitioner, or to any natural parent whose parental rights have been terminated through a guardianship decree, is a *right of notice* as to the child(ren)'s status, and no more. This right to notice does not extend even to the fact of a review hearing, let alone the date, place, and time of any such hearing. Nor can this notice provision be distorted in such a way as to grant Petitioner the right to participate in a § 5–319 review hearing: it does not confer party status. While the statute may envision the possibility of Petitioner's reunification with her children, the right of notice acts merely as a signal to the natural parent that should she desire to plead the case for her re-involvement, she must either contact and persuade the guardian to recommend such or file a motion with the court for permissive intervention.

We hold that, as a natural parent whose parental rights had been terminated yet who had not waived the right to notice of a delay in her children's adoption, Petitioner had a statutory right under § 5–319 to participate in the court hearing con-

---

standing, it appears that such a hearing was warranted: over three years had passed since the initial decree of guardianship on October 20, 1993 and no placement for adoption had been timely made nor final decree of adoption entered. *See* § 5–319(b)(1) and (b)(3). Although at the time of Petitioner's request, the court had not yet received a report from the guardian DHHS which would trigger a hearing under § 5–319(f), on April 4, 1997 the court was in receipt of the agency's March 31, 1997 report, which explicitly indicated that it was prompted by DHHS's duty as guardian to file a report pursuant to § 5–319.

ducted to review her children's status.[6] This right derives, first, from the statutory conferral of party status upon a natural parent attending a § 5–319 hearing, as indicated by the explicit provision of counsel, under § 5–323(b)(2) and Article 27A, § 4(b)(5), to such a parent, if indigent. Secondly, the right to participate in the review hearing, possessed by any natural parent who has not waived notice of the child(ren)'s status, evolves also from the implicit acknowledgment by the Legislature of natural parents' "renewed" legal interest in their children in requiring that notice be given to them in the event of a delay in adoption.

### *Natural Parents' Party Status*

The notice-of-status requirement found within § 5–319 has been a part of the statute since its enactment in 1982 when the statute was codified as Article 16, § 75.[7] The statute has always required that natural parents be notified in the event

---

**6.** Because our decision in this case rests upon Petitioner's statutory right of participation, we do not address her argument that such participation is constitutionally required as a matter of due process.

**7.** *See* Laws of Maryland, 1982, Ch. 514; Maryland Code (1957, 1981 Repl.Vol., 1982 Cum.Supp.) Article 16, § 75. The provision which now appears as § 5–319(a), defining "disrupted placement," originally appeared as Article 16, § 68(d). The provision requiring notice of the child's status, which now appears as § 5–319(b), originally appeared under Article 16, § 75(a), as follows:

(a) *In general.*—Following a decree of guardianship, including an involuntary termination of natural parents' rights under § 76 of this article, *a parent has a right to receive notification of the child's status*, if:

(1) A placement for adoption is not made within 1 year from the entry of a decree of guardianship;

(2) When a placement for adoption has been made within 1 year from the entry of a decree of guardianship, the placement is disrupted, and a new placement is not made within 120 days of the disruption; or

(3) A final decree of adoption has not been entered within 3 years of the placement for adoption. [Emphasis added.]

While this particular provision has undergone some revision during the past seventeen years, most notably with respect to the amount of delay which triggers the statute, the changes are not directly relevant to our analysis in this case.

of certain, specifically defined delays in the adoption of their child(ren) under guardianship. A separate provision within Article 16, § 75(d) had required that natural parents also receive notice, unless waived, of the review hearing.[8] In 1984, while re-codifying Article 16, § 75 as § 5–319 of the newly created Family Law Article, the General Assembly amended the language of the provision requiring notice of the review hearing and included it within § 5–319(f).[9] This provision, in both its original and amended form, essentially instructed the court to hold a review hearing only after the requirement of notice of the hearing to the natural parents was satisfied. In 1987, the General Assembly repealed the requirement of notice to the natural parents of the hearing as a condition precedent to holding the hearing.

It is upon this repeal of the provision requiring notice of the hearing that Respondent substantially bases its contention that Petitioner had no right to participate in the § 5–319 hearing held by the circuit court on April 23, 1997. The Court of Special Appeals similarly found the Legislature's repeal of the right to notice of the hearing to be dispositive:

In this revision, the General Assembly specifically removed the requirement that the child's status hearing be

---

**8.** *See* Maryland Code (1957, 1981 Repl.Vol., 1982 Cum.Supp.) Article 16, § 75(d), which provided, in pertinent part, as follows:

(d) *Court to review guardian's report; hearing.*—The court shall review the guardian's report. If the decree of guardianship does not include a waiver of the right to receive notification, the court shall hold a hearing, *after notice to the parent* at the last known address which the guardian has for the parent. [Emphasis added.]

**9.** *See* Laws of Maryland, 1984, Ch. 296, § 2; Maryland Code (1984) § 5–319(f) of the Family Law Article, which provided, in pertinent part, as follows:

(f) *Court action on delay.*—On receipt of the guardian's report on a delay in placement for adoption, the court:

(1) shall review the report;

(2) unless both natural parents have waived notice in accordance with subsection (d) of this section, shall hold a hearing *after each natural parent who has not waived notice has been notified,* at the last address known to the guardian, *of the hearing;* ... [Emphasis added.]

held only after the natural parent was notified of the hearing.

\* \* \* \* \* \*

After reviewing the language and history of F.L. § 5–319, we conclude that, if there ever was a time when the parent was entitled by right to participate in the mandatory status hearing, this right was revoked by the General Assembly when it revised subsection (f) in 1987.

*In re Adoption No. 11387,* 120 Md.App. 566, 577, 707 A.2d 926, 932 (1998).

Before addressing the 1987 rescission of the notice-of-hearing requirement in § 5–319(f), we turn our attention to two separate, yet linked provisions within the Maryland Code that make specific reference to § 5–319(f) hearings. Article 27A, § 4 provides, in pertinent part:

**§ 4. Duty to provide legal representation.**

(a) *In general.*—It shall be the primary duty of the Public Defender to provide legal representation for any indigent defendant eligible for services under this article. . . .

(b) *Included proceedings.*—Legal representation shall be provided indigent defendants or parties in the following proceedings:

\* \* \* \* \* \*

(5) An involuntary termination of parental rights proceeding or a hearing under § 5–319 of the Family Law Article, if the party is entitled to Public Defender representation under § 5–323 of the Family Law Article.

The cross-referenced § 5–323 in turn provides in pertinent part as follows:

**§ 5–323. Counsel.**

\* \* \* \* \* \*

(b) *Representation by public defender.*—The public defender shall represent:

(1) in an involuntary termination of parental rights, an indigent parent; and

(2) in a hearing under § 5–319 of this subtitle, an indigent natural parent who has not waived the right to receive notice of the child's status.

■ Hence, a natural parent is entitled, by statute, to representation by the Public Defender in a § 5–319 review hearing as long as that parent is indigent and has not waived the right to receive notice of the child's status. DHHS's sole response to the existence and possible import of this right to appointed counsel is that the provision does not apply to Petitioner because she waived the right to notice of her children's status. As discussed later, however, we reject this contention by the agency and hold that Petitioner did not waive her right to such notice. *See infra* Part II.C. Because Respondent's argument that the right-to-counsel provision does not apply in the present case is founded upon a singular, false premise, it cannot logically stand, and, hence, must fall.

Besides this now failed argument, DHHS has ·in no way accounted for the right-to-counsel provision in the position it advocates before this Court. Nor has the guardian agency offered any other explanation why Petitioner should not have been represented by the Public Defender at the April 23, 1997 hearing.[10] Even more detrimental to its cause, the agency is silent as to how the right-to-counsel provision fits within the overall scheme of § 5–319 and how it might reasonably support its construction of the statute as not affording Petitioner

---

**10.** DHHS has not disputed that Petitioner meets the first condition for the provision of public counsel under § 5–323(b)(2), that of indigence. Presumably the agency has not done so for good reason. According to the record in this case, Petitioner has been continuously represented by the Office of the Public Defender since the summer of 1994 through her present appeal before this Court. The Public Defender's representation of Petitioner began as early as July 28, 1994, on which date the office filed Petitioner's Motion to Intervene in her children's July 25, 1994 Motion to Request a Hearing pursuant to § 5–319. All the documents filed and hearings held in this case after July, 1994, before the trial court and both courts of appeal, indicate the legal representation of Petitioner by the Public Defender.

the right to participate in a review hearing thereunder.[11] The legislative guarantee of public counsel to indigent natural parents for § 5–319 review hearings plays a crucial role in determining the status and the rights the statute affords to Petitioner—or to any other natural parent who has not waived the right to notice of her child's status—at such hearings.

It is not immediately apparent from the language of the current statute itself what, if any, status natural parents have at a review hearing under § 5–319. The cross-referencing provision of counsel under Article 27A, § 4(b), however, expressly employs the term "parties" (as well as the singular form "party") in referring to natural parents. The term's appearance in a statute generally directing the Public Defender to represent indigent persons in certain "legal proceedings" and its specific conjunction with the term "defendants" supports reading the term in a legal sense. Moreover, the General Assembly has demonstrated a capacity to exempt persons from legal party status in family law proceedings when it desires to do so. *See* Maryland Code (1974, 1998 Repl.Vol.) § 3–826.1(g)(4) of the Courts and Judicial Proceedings Article (expressly withholding automatic party status from foster parents, pre-adoptive parents, and childcare-providing relatives despite their rights to notice and the opportunity to be heard in Child In Need of Assistance proceedings). Similarly, this Court, in our legislative capacity of promulgating rules and procedures implementing the statutory provisions of the Family Law Article, has recently made clear when a provision of notice does not infuse a natural parent with standing to participate in a guardianship action. *See* Maryland Rule 9–104(c).[12] Neither we nor the General Assembly

---

**11.** Petitioner did not include a right-to-counsel claim in her brief before the Court of Special Appeals. The intermediate court thus did not address the issue in its opinion below.

**12.** Rule 9–104 of the Maryland Code provides as follows:

**Rule 9–104. Notice to consenting parents.**

(a) Upon the filing of a petition for adoption or guardianship, the court shall send a notice of the filing to each person whose parental rights have not previously been terminated and who, pursuant to

has denied party status to natural parents under § 5–319. Based on these considerations, we conclude that natural parents who have not expressly waived the right to notice of a delay in their child(ren)'s adoption enjoy a statutorily conferred party status for review hearings held pursuant to § 5–319(f).[13]

We come then to the following question: How does the provision to indigent natural parents of the right to public counsel at a § 5–319 review hearing, and the party status it confers, jibe with the 1987 repeal of natural parents' right to notice of the review hearing? Did the amendment also repeal natural parents' party status and the concomitant right to participate in the review hearing, or did the amendment merely modify them?

The Legislature's 1987 repeal of then § 5–319(f)(2)'s prohibitive requirement, that notice to natural parents of the review hearing be achieved before such a hearing could be held, was conjoined with no effect whatsoever upon § 5–323(b)(2)'s guarantee of counsel.[14] Indeed, the right-to-counsel provision has

---

Rule 9–102, has consented to the adoption or guardianship but has requested notice of the filing of the petition. If the person has also requested notice of further proceedings concerning the adoption or guardianship, the court shall send notice of any hearing to be held prior to the entry of a judgment terminating that person's parental rights and of the entry of any judgment terminating those parental rights.

(b) Notice under this Rule shall be sent by first class mail to the address given on the consent form unless the person has, in writing, provided a new address.

(c) *The sending of notice pursuant to this Rule does not* affect the consent signed by the person or *give the person any standing to participate in the action.* [Emphasis added.]

**13.** While the right-to-counsel provision strictly applies only to indigent natural parents who have not waived the right to notice of their child(ren)'s status, we see no reason why the party status thereby conferred would not extend to natural parents who do not qualify as indigent.

**14.** The Laws of Maryland, 1987, Ch. 606, which *inter alia* repealed natural parents' right to notice of the review hearing under § 5–319(f), included no revision of the right to counsel at such a hearing found in § 5–323(b)(2).

remained substantively intact since its inception.[15] Most importantly, the right-to-counsel provision has always been linked to the right of natural parents to notice *of the child's status,* not to the right to notice *of the review hearing.*[16] Had the General Assembly intended to significantly alter § 5–323(b)(2)'s provision of the right to counsel, and its conferral of party status upon natural parents, repealing the right to notice of the hearing under then § 5–319(f)(2) comprised a rather indirect method of accomplishing such. The more sensible interpretation is that any deliberate incursion upon the status and remaining rights of natural parents whose parental rights have been terminated would have been effected by the Legislature through direct modification of the right-to-counsel provision itself, or through some revision of the right of natural parents to notice of their child(ren)'s status. We therefore disagree that the repeal of the notice-of-hearing provision negated whatever right to participate a parent had in the review hearing, for natural parents' right of participation need not have resided only in that provision.

It is evident from the original enactment and history of the provisions relating to a delay in adoption after guardianship, particularly the right-to-counsel guarantee and the two notice requirements, that the General Assembly has been seeking continually to balance the interests of natural parents in the possible reunification with their child(ren) against the paramount concerns that review hearings occur relatively quickly

---

**15.** The text of the right-to-counsel provision originally appeared in 1982 as follows: "In a guardianship or adoption proceeding, the court shall appoint separate counsel to represent ... [i]n a hearing under § 75 of this article, *an indigent parent who has not waived the right to receive notification of the child's status."* Maryland Code (1957, 1981 Repl. Vol., 1982 Cum.Supp.) Article 16, § 77B(a)(5) (emphasis added). Again, § 75 of Article 16 was re-codified in 1984 as § 5–319 of the Family Law Article. *See supra* note 9 and accompanying text. The current version of the right-to-counsel provision reads: "The public defender shall represent ... in a hearing under § 5–319 of this subtitle, *an indigent natural parent who has not waived the right to receive notice of the child's status."* § 5–323(b)(2) (emphasis added).

**16.** *See supra* note 15.

and that the court be enabled to assess the children's best interests and take appropriate action in a timely fashion. Both parties before this Court have acknowledged that the purpose in repealing the notice-of-hearing requirement in particular was to ensure that review hearings in fact be held in every case, that delayed adoptions not be delayed unnecessarily longer, and that the best interests of the child(ren) be met as soon as possible. It is clear that the Legislature intended that the proceedings not be delayed by the inability to serve notice upon both parents. This assessment is in accord with the legislative history of the 1987 amendment.

The Senate Judicial Proceedings Committee declared the "Legislative Intent" of the 1987 amendment of § 5–319 to be "to insure periodic circuit court review of agency efforts to achieve adoption or long-term placements of children in foster care." 1987 Senate Judicial Proceedings Committee, Summary of Committee Report, Senate Bill 183, at 2. Unfortunately, however, not a single comment within the bill file for Chapter 606 of the 1987 Laws of Maryland is dedicated specifically to the repeal of the notice-of-hearing provision, nor does there appear within the legislative history any clear intent or statement of purpose on the part of the General Assembly with respect to the status and rights of natural parents at such hearings. Consequently, the legislative history of the 1987 amendment of § 5–319 does not speak against the interpretation that natural parents have retained their party status and right of participation in § 5–319(f) review hearings.

■ Given the background, history, legislative intent, and underlying concerns presented by the particular provisions in question, combined with the general purposes and goals of the adoption and guardianship statutes, we conclude that the repeal of the prohibition that a review hearing could not be held until the guardian had achieved notice to the natural parents of the hearing was not intended by the Legislature to rescind the right of natural parents to participate in § 5–319 hearings, nor their party status. This is not to say, however,

that the 1987 amendment of § 5–319 had no effect on natural parents' right of participation and party status. For, Respondent is undoubtedly correct in asserting that "[t]he elimination of the parental-notice[-of-hearing] requirement in itself ... indicates the legislative intent to rescind any rights that requirement may have been originally intended to serve."

While DHHS assumes the repealed provision to have served at most the right of natural parents to participate in a § 5–319 hearing, the prohibition of a hearing in the absence of notice to the natural parents had afforded those parents much more than the bare right to participate in the hearing. Rather, from 1982 to 1987,[17] natural parents, whose parental rights had been terminated yet who had not affirmatively waived their right to notice of a delay in the adoption process, essentially enjoyed the ability to forestall or prevent a review hearing, merely by avoiding notice—whether intentionally or unintentionally. Even more significantly, these parents seemingly possessed the right to compel the court to void the effects of any such hearing conducted without their notice. In sum, what the repealed provision had misguidedly established in 1982 was that, once the adoption process passed a critical point of delay, in the absence of notice to the natural parents, no agency action or court resolution could be finalized. Five years later the Legislature sought to undo its misdeed. From our perspective then, the legislative intent of the repeal of the notice-of-hearing provision was simply to retract the perverse power placed by that provision during its half-decade lifespan upon natural parents whose parental rights had been terminated.

Although the repeal of the right to notice of the hearing ensures that hearings may be conducted and final actions taken irrespective of the natural parents' knowledge thereof, or interests therein, the repeal does not require that natural

---

**17.** Again, the notice-of-hearing requirement was originally enacted in 1982; in 1984 its language was amended and the provision was recodified as part of the Family Law Article. *See supra* notes 8 and 9 and accompanying text.

parents lose all status and rights. In short, the fact that natural parents no longer have to be included in § 5–319 hearings does not necessitate that they be excluded. It is our view that the General Assembly in 1987 purposefully went only so far as necessary to ensure that delayed adoptions be acted upon quickly and appropriately by the circuit court. We therefore hold that the 1987 amendment of § 5–319 did not rescind natural parents' party status or their right to participate in § 5–319 hearings; instead, it revoked their status as parties *necessary* to such hearings. In essence, the repeal of the right to notice of the hearing placed a greater burden on natural parents whose parental rights have been terminated to be more proactive in bringing about reunification with their child(ren). Rather than wait to be notified of any hearing conducted under the possibility of such a result, it is now incumbent upon natural parents to keep informed of their child(ren)'s status as well as the related proceedings and actions being undertaken. For while a natural parent should certainly be able to rely on the guardian agency to fulfill its duty of notification in the event of a delay in the adoption process, it would seem that after 1987, failure by the guardian to notify natural parents of the status of their child(ren) in the event of such a delay cannot be grounds either for preventing a § 5–319 review hearing from occurring without their presence, or for voiding the hearing after its occurrence.[18]

### *Natural Parents' "Renewed" Interest*

We agree with both parties before this Court, as we intimated in our earlier caveat in this case, *In re Adoption No. 93321055*, 344 Md. at 487–88, 687 A.2d at 695, that § 5–319 contemplates, indeed since its inception has always contemplated, the possibility of reunifying children under guardianship with their natural parents. Similarly, the Court of Special Appeals has acknowledged that "some measure of parental

---

**18.** Nonetheless, the natural parent's party status should suffice in the instance of a proactive parent's motion to reschedule the hearing at a more convenient time or for other like motions.

re-involvement is to be found within F.L. § 5–319." *In re Adoption No. 11387,* 120 Md.App. 566, 578, 707 A.2d 926, 932 (1998). We presume the underlying policy rationale to be that when the adoption process has been significantly delayed, the reasons for termination of parental rights may no longer abide, or may have been sufficiently overcome. Moreover, in an instance such as that claimed by Petitioner, a natural parent's statutorily deemed consent may have arisen from a failure to comply with the duties imposed upon her by the filing of a guardianship petition, rather than from a lack of interest or a self-recognized lack of fitness.

 The delay in adoption acts in some sense to permit a "renewed" legal interest of natural parents in their children with respect to whom their parental rights have been terminated. The judicial conclusion that such a parent stands as "a legal stranger to [the] offspring" in question, *Walker v. Gardner,* 221 Md. 280, 284, 157 A.2d 273, 275 (1960), is thus legislatively mitigated by a subsequent delay in adoption, which delay becomes the triggering cause for keeping natural parents notified as to their children's status once such circumstances arise. It was perhaps in recognition of this change in the natural parent's legal relationship to a child under guardianship that DHHS itself, assured the circuit court in one of its earlier pleadings in this case that "the mother ... has a *right to notice and to further hearing* pursuant to Family Law Article, Section 5–319 in the event of specified delays in adoption after guardianship has been granted." (Emphasis added.)

Nonetheless, parallel to our discussion above regarding the statute's framework and history, § 5–319's implicit recognition of natural parents' possible "renewed" legal interest in their children once a delay in adoption occurs does not invest automatically or by default. Natural parents whose parental rights have been terminated must actively pursue reunification. In undertaking such a pursuit, natural parents may rely upon and avail themselves of the right to participate in a § 5–319 review hearing. Moreover, it is the natural parents' active

pursuit, comprised in part by their attendance at the review hearing, rather than the court's discretionary leave, which is the grounds for participation as of right.

## C.

As a final matter, we reject Respondent's implicit assertion that an easy resolution to this case lies in the determination that Petitioner's failure to respond to the guardianship petition, constituting her consent as a matter of law to the guardianship pursuant to § 5–322(d), "waived her right to notice of the original proceedings, and must likewise be deemed to have waived her right to notice of the children's status under F.L. § 5–319(b)." Respondent's Brief at 9. Put another way, Respondent contends that waiver of the right to notice under § 5–319(b) is implied as a matter of law from a natural parent's statutorily deemed consent to the guardianship. Respondent's argument is unsound for a host of reasons.

We first note that, even if Respondent's contention that Petitioner waived her right to notice under § 5–319 were correct, it would not necessarily settle the central dispute in this case—whether Petitioner was entitled to participate in the § 5–319 status review hearing. Petitioner's complaint is not that DHHS failed to give her the notice required under § 5–319(b). Providing such notice was unnecessary in the present case because the apparent catalyst for the April 23rd status review hearing was Petitioner's "Request For Hearing Based Upon Delay in Adoption," which was granted by the circuit court.[19] DHHS seems to insinuate, however, that the alleged-

19. It appears from the record that since the date guardianship was granted to DHHS, the agency filed only one report with the circuit court regarding the delay in the boys' adoption. That report was filed on April 4, 1997. Given that guardianship was originally granted to DHHS on October 20, 1993, it would seem that at least one of the events enumerated in § 5–319(b)(1)–(3), triggering the agency's duty as guardian to file a report with the court, arose long before April, 1997. In earlier pleadings to the circuit court, as well as in its brief before the Court of Special Appeals, DHHS stated that the agency itself did not

ly implied waiver of Petitioner's right to notice of the delay in her children's adoption under § 5–319(b), despite her actual notice in this case, effectively resulted in her having no rights whatsoever with respect to the review of her biological children's status. Yet even Respondent acknowledges that a natural parent whose parental rights have been terminated has some level of interest in the status of her biological children that is greater than a third party unrelated to the children or previously uninvolved in the matter. Moreover, Respondent does not dispute that § 5–319 as a whole contemplates the possibility of reunification of the child(ren) with the natural parent(s). Regardless of what the effect of a waiver of the right to notice under § 5–319(b) might be, we reject the agency's proposition that the waiver incorporated in a failure to object under § 5–322(d) also constitutes a waiver under § 5–319.[20]

In support of its argument, Respondent seizes upon several statements from our earlier decision in this case. DHHS's utilization of those statements, however, demonstrates a misapprehension of our rationale and the agency's reliance on them is thus misplaced. First, DHHS quotes from our statement that "the evident purpose" of the statutorily deemed consent under § 5–322(d) was

> to cut off the right of a parent who fails to file a timely objection to any further notice and any right to participate

---

take action under § 5–319 because none was required. Whereas the delay in adoption was "caused" by Petitioner's protracted trial and appellate litigation over the decree of guardianship, rather than being due to any failure on the agency's part to find an adoptive home for the boys, DHHS did not feel compelled to file a report or to notify the natural parents of the delay in their sons' adoption. In any event, by the time DHHS finally filed its report, the court had already granted Petitioner's request for the § 5–319 hearing.

**20.** Presumably a natural parent's express waiver of the right to notice of a delay in the child(ren)'s adoption after a grant of guardianship, as provided for in § 5–319(d), would have the same effect as the implied waiver proposed by Respondent. We emphasize, however, that we are expressing no judgment as to the effect of a waiver of the right to notice under § 5–319(b) upon other aspects of § 5–319.

in the action. Indeed, that parent has fewer, not greater, rights than the parent who signs a written consent, for the latter is expressly authorized to retain the right at least to notice of further proceedings, though not the right to participate in them.

*In re Adoption No. 93321055,* 344 Md. 458, 485, 687 A.2d 681, 694 (1997). The agency also highlights our declaration that the statutorily deemed consent

becomes fully effective when the time for filing an objection expires. Thereafter, as to the non-objecting parent, the case becomes uncontested, in the same manner as to a parent who has consented under § 5–317 *without reservation* and has allowed the revocation period to lapse.

*Id.* at 486, 687 A.2d at 694 (emphasis supplied by Respondent).

The very next sentence from our earlier opinion clarifies the true import of our reasoning as to the purpose and effect of statutorily deemed consent in guardianship cases: "Such a parent is entitled to no *further notice of proceedings on the DSS petition* and has no further right to participate *in the action.*" *Id.,* 687 A.2d at 694–95 (emphases added). At the end of its own quotation from this sentence, DHHS appends the phrase "including any review" and thus misconstrues what we were saying. For, this last sentence excerpted from our earlier opinion makes clear, first, that the term "reservation" pertained only to the right to *further notice* [21] and, second, that the terms "notice" and "right to participate" referred solely to proceedings involving a *petition for guardianship. See* § 5–317 ("Petitions for guardianship") [22] and § 5–322

---

**21.** Maryland Rule 9–104(a), the complete text of which is reproduced *supra* note 12, illustrates the distinction between the required original notice of the guardianship petition and the optional further notice of proceedings held pursuant to such a petition. Although not cited in our earlier opinion in this case, Respondent cannot claim any unawareness of Rule 9–104 given that Petitioner cited its full text in her brief submitted to this Court on the present matter.

**22.** Section 5–317 provides as follows:

**§ 5–317. Petitions for guardianship.**

("Notice").[23] Our earlier decision in the present case thus

(a) *In general.*—A petition for·a decree of adoption may be preceded by a petition for guardianship of the child.

(b) *Exclusive petitioner.*—Only the executive head of a child placement agency or the attorney for the child on behalf of the child may file a petition for the agency to be granted guardianship.

(c) *Requirements for granting petition.*—Except as provided in §§ 5–313 and 5–313.1 of this subtitle, the court may grant a decree awarding guardianship only:

(1) after any investigation and hearing the court considers necessary; and

(2) with the consent of each living natural parent of the child.

(d) *Ruling.*—Within 180 days after a petition for guardianship or petition for adoption is filed under § 5–313 of this subtitle, the court shall rule on the petition.

(e) *Revocation of consent.*—In a proceeding for guardianship, consent may be revoked at any time within 30 days after the consent is signed.

(f) *Effect of guardianship decree.*—A decree of guardianship:

(1) terminates the natural parents' rights, duties, and obligations toward the child;

(2) subject to § 5–319 of this subtitle, eliminates the need to give notice to the natural parents of the filing of a petition for adoption of the child;

(3) eliminates the need for a further consent by the natural parents to an adoption of the child; and

(4) subject to § 5–319 of this subtitle, authorizes the child placement agency to consent to joint guardianship, custody, or other long-term placement that the agency determines to be in the child's best interest.

(g) *Joint guardianship.*—(1) After any investigation and hearing the court considers necessary, the court may grant a decree awarding joint guardianship, custody, or other long-term placement that the court determines to be in the child's best interest.

(2) If joint guardianship is 'awarded to a caregiver, the child placement agency shall retain guardianship with the right to consent to adoption or long-term care short of adoption.

23. Section 5–322 provides in pertinent part:

§ 5–322. Notice.

(a) *In general.*—(1)(i) Subject to paragraph (2) of this subsection, a petitioner shall give to each person whose consent is required notice of the filing of a petition for adoption or a petition for guardianship.

(ii) In addition to the notice of filing required under subparagraph (i) of this paragraph, if a petition for guardianship is filed after a juvenile proceeding in which the child has been adjudicated to be a child in need of assistance, a neglected child, or an abused child, a petitioner shall give notice of the filing of the petition for guardianship to:

dealt only with the circuit court's rulings as to guardianship; it had no bearing on the post-guardianship matters found in the Family Law Article.

Contrary to Respondent's interpretation, the § 5–319 status review hearing precipitated by a delay in adoption subsequent to the decree of guardianship is separate from the § 5–317 petition for guardianship itself. Likewise, a guardian's requirement to give notice under § 5–319 comprises a duty that is different from and unaffected by the notice requirement under § 5–322. Even so, the Court of Special Appeals found, as cited by Respondent, that "the requirements of F.L. § 5–319 are analogous to the requirements of F.L. § 5–322." *In re Adoption No. 11387,* 120 Md.App. 566, 578, 707 A.2d 926, 932 (1998). It is our conclusion, however, that the analogy does not run sufficiently deep.[24]

---

 1. the attorney who represented a natural parent in the juvenile proceeding; and

 2. the attorney who represented the minor child in the juvenile proceeding.

 (2) A person whose consent is filed with the petition need not be given notice if the consent includes a waiver of the right to notice of the filing of the petition.

 (3) The petitioner shall give notice by entry and service of a show cause order sent to the last known address that the petitioner has for each person whose consent is required.

* * * * * *

 (c) *Waiver.*—(1) Except in an independent adoption, if the court is satisfied by affidavit or testimony that the petitioner, after reasonable efforts in good faith, cannot learn the identity or location of a natural parent, the court may waive the requirement of notice to the natural parent.

* * * * * *

 (d) *Failure to respond or waiver of notification.*—If a person is notified under this section and fails to file notice of objection within the time stated in the show cause order or if a person's notification has been waived under subsection (c) of this section:

 (1) the court shall consider the person who is notified or whose notice is waived to have consented to the adoption or to the guardianship; and

 (2) the petition shall be treated in the same manner as a petition to which consent has been given.

**24.** Moreover, were we to view the two notice provisions as analogous, the analogy, once properly drawn, would arguably support a conclusion

That the provisions of § 5–319 are distinct from those of §§ 5–317 and 5–322 is obvious from the plain language and structure of the three sections. Sections 5–317 and 5–322 pertain solely to "a petition for guardianship," § 5–317(a), and "notice of the filing of a petition for adoption or a petition for guardianship," § 5–322(a), at which point the parental rights of the natural parents are still intact, *cf.* § 5–317(f)(1) (indicating that effect of decree of guardianship is to terminate natural parents' rights). On the other hand, § 5–319 applies only after guardianship has been granted—and the parental rights of the natural parent(s) have been terminated. *See, e.g.,* § 5–319(b) ("a guardian with the right to consent to

---

contrary to that of the Court of Special Appeals. The intermediate court analogized § 5–319 to § 5–322 because the latter

> mandates notice of adoption/guardianship proceedings *to those parents who have previously signed a written consent to have their parental rights terminated.* The notice requirement is merely a measure designed to alert the natural parent of the proceedings and does not create a corresponding right to participate in those proceedings. *In re Adoption/Guardianship No. 93321055/CAD*, 344 Md. [458,] 485, 687 A.2d 681 [ (1997) ].

*In re Adoption No. 11387*, 120 Md.App. 566, 578, 707 A.2d 926, 932 (1998) (emphasis added). Contrary to the intermediate court's implication, the notice requirement under § 5–322 is not restricted only to parents who have given affirmative consent to guardianship. Instead, § 5–322(a) expressly mandates that "a petitioner shall give to each person whose consent is required notice of the filing of a petition for adoption or a petition for guardianship." *See supra* note 23. Stemming from its limitation of the scope of persons to whom § 5–322 applies, the intermediate court's characterization of the limited effect of the notice requirement under § 5–322, which notion the court supports with a citation to this Court's earlier opinion in this case, neglects the fact that such a limitation of the notice requirement's effect applies strictly to those parents who have affirmatively or statutorily consented to guardianship. The fact that notice of guardianship proceedings to consenting parents does not incorporate the right to participate in those proceedings hardly transfers the same limitation to "each person" to whom the prospective guardian must give notice under § 5–322(a). For instance, notice to a parent who has not consented to guardianship, either affirmatively or statutorily, undeniably incorporates the right of that parent to participate in the guardianship proceedings. In the same vein, where § 5–319(b) requires the decreed guardian to give notice of a delay in adoption to a natural parent who has not waived such notice, it need not be the case that such notice includes no right of that parent to participate in the hearing conducted to review the delay in question. *See supra* Part II.B.

adoption ... shall ... give notice of the child's status to each natural parent."); § 5–319(c) ("The guardian shall mail the notice required ...."); § 5–319(h) ("The court may require the guardian to file periodic written progress reports on the child's status....").

Moreover, the General Assembly explicitly ensured that the duties and provisions of § 5–319 "includ[e] a guardian with the right to consent to adoption *who was appointed without the consent of the natural parents.*" § 5–319(b) (emphasis added).[25] Hence, the statute applies and compels DHHS to notify Petitioner whenever § 5–319 is triggered. More importantly, § 5–319 provides that a waiver by a natural parent of "the right to notice under this section ... *shall appear expressly* in: (1) the natural parent's consent to the guardianship; and (2) the decree of the guardianship." § 5–319(d) (emphasis added). Petitioner did not give affirmative consent to the guardianship; instead, her consent was only statutorily deemed by her failure to respond to DHHS's petition. Hence,

---

**25.** This phrase of inclusion within § 5–319(b) is obviously meant to extend the provisions of § 5–319 to any parent whose parental rights, like Petitioner's, have been terminated on account of statutorily deemed consent. It could be argued that a guardian who was appointed on the basis of deemed consent was not "appointed without the consent of the natural parents," and hence such a guardian, like DHHS, is not subject to the requirements of § 5–319. Such an argument, however, would amount to little more than sophistry. For, implicit from the Legislature's employment of this phrase is the default position that § 5–319 automatically applies to guardians appointed with the consent of the natural parents. Because DHHS was appointed with the *deemed* consent of Petitioner, the directives of § 5–319 would thus apply to the agency as guardian. Consequently, guardians appointed through deemed consent are subject to § 5–319 regardless of whether their appointment is considered to have been with the consent of the natural parents or without it. Were this not true, some resulting occurrences would defy common sense. For instance, it would certainly be anomalous for the Legislature to afford greater protection to the interests of a parent who refused to consent to guardianship, contested the termination of parental rights and yet lost, than to those of a parent whose consent is deemed by operation of law under § 5–322(d), either because the parent failed to file timely notice of objection to a petition for guardianship or adoption, or because notification to the parent of the petition was waived pursuant to § 5–322(c) because the parent could not be identified or located.

any waiver by her of the right to notice under § 5–319 could not have appeared "expressly" as required.[26]

Another miscue by DHHS in propounding its waiver of notice argument is its failure to heed this Court's admonition regarding the effect of the expiration of the revocation period for a parent who consented to guardianship without reserving the right to further notice. Given our equation of such a parent with a parent statutorily deemed to have consented, as discussed earlier, the effect upon Petitioner would be identical:

> Unless the parent, in the consent, has expressly reserved the right to notice, he or she is not entitled to any notice of the petition or of any proceedings on it, including entry of a judgment, for the consent has made the case an uncontested one with respect to that parent. *The only further notice to which such a parent is entitled, unless it too has been waived, is that provided for in § 5–319(b)* . . . .

*In re Adoption No. 93321055,* 344 Md. at 484–85, 687 A.2d at 694 (emphasis added). We thus made abundantly clear that waiver of the right to further notice of proceedings relative to guardianship does not by itself constitute waiver of the right to notice under § 5–319(b). Instead, a separate, express waiver is required by § 5–319(d), as we have already indicated.[27]

---

**26.** Naturally, the decrees of guardianship issued by the circuit court contained no such express waiver of Petitioner's right to notice under § 5–319. Quite the opposite, the court ordered "that *all rights* provided in the Annotated Code of Maryland, Family Law Article, Section 5–319, *with respect to future notification of the child's status be and hereby are reserved to the parents.*" (Emphasis added.)

**27.** In addition, we point out that at the beginning of our analysis in *In re Adoption No. 93321055,* 344 Md. 458, 687 A.2d 681 (1997), we listed the explicit effect of a natural parent's failure to timely object to a petition for guardianship upon the requirement of further notices relative to guardianship:

> If the parent fails to file a timely objection, no further notices need be given to the parent, *prior to or upon the entry of a judgment of guardianship.* This conclusion is clear from both the structure and the history of the relevant statutes and rules.

*Id.* at 481, 687 A.2d at 692 (emphasis added). The highlighted phrase gave further indication that the waiver incorporated in a natural

Contrary to Respondent's misreading and misapplication of our earlier pronouncements in this case, the fact that the status of a non-objecting parent is the same as that of a natural parent who has consented to guardianship under § 5–317 "without reservation" is irrelevant to the application of § 5–319, under which no such reservation is necessary. The right to notice under § 5–319 is specifically guaranteed by the plain language of the statute to any natural parent, including Petitioner, who failed to file timely notice of objection to the petition for guardianship. Upholding DHHS's attempt to extend the pertinent rationale of *In re Adoption No. 93321055* would therefore lead to a legally untenable conclusion, the judicial repeal of a legislative provision. The Legislature has mandated that Petitioner's waiver of the right to notice under § 5–319 be express.

Lastly, Respondent's prior pleadings in this case substantially undermine, if they do not waive, the agency's current position on appeal. In opposing Petitioner's July 28, 1994 "Motion to Intervene" in her biological, yet no longer legal children's July 25, 1994 request for a hearing pursuant to § 5–319, DHHS argued to the circuit court that "the mother already has a *right to notice and to further hearing* pursuant to Family Law Article, Section 5–319 in the event of specified delays in adoption after guardianship has been granted." Response to Motion to Intervene, August 9, 1994 (emphasis added).[28]

---

parent's deemed consent to guardianship loses its relevance vis-à-vis notice requirements once guardianship is granted.

**28.** The record indicates that, in apparent response to the children's motion, the circuit court held a status hearing on August 11, 1994. Neither a transcript of that hearing nor any related decision or order by the court appears in the record. According to Petitioner, she was never notified of the August 11, 1994 hearing, which she consequently did not attend. Furthermore, the August 11, 1994 hearing appears to be the only such hearing conducted by the court until April 23, 1997, despite the fact that § 5–319(f) commands the court to hold a hearing every twelve months after the initial one. Of course, this case was being litigated in the circuit court and appellate courts during the vast majority of this period. Finally, it was not until during the April 23,

For all the preceding reasons, we hold that Petitioner did not waive her right to notice under § 5–319. The waiver of the right to notice of further proceedings in the guardianship action and of the right to participate in them, which we held to be incorporated in Petitioner's failure to object to DHHS's petition for guardianship, *In re Adoption No. 93321055*, 344 Md. at 486, 687 A.2d at 694, has no bearing on Petitioner's right to notice of her children's status under § 5–319(b). By the same token, that waiver could not impinge upon the right of a natural parent to participate in a status review hearing held pursuant to § 5–319(f).

### *Conclusion*

As a party to any proceedings related to a delay in the adoption of their child(ren), and as persons with a legal interest in their child(ren) "renewed" by the delay in adoption, natural parents who have not waived the right to notice of their child(ren)'s status have standing to request a review hearing, as did Petitioner, or, upon their request, to be informed as to the time, date, and place of such a hearing already scheduled. Moreover, even after the 1987 amendment of § 5–319, natural parents retain the right to be assisted by counsel at a review hearing; the right, if indigent, to be represented by public counsel; and, finally, the right to participate in such a hearing, including the right to testify and present witnesses. If a natural parent who has not waived the right to notice of her child(ren)'s status under § 5–319 attends a review hearing thereunder, none of these rights can be lawfully denied her. Because Petitioner was denied her statutory right to participate at a hearing in which she was present, we shall remand the case for re-hearing by the circuit court.[29]

---

1997 hearing that the trial court expressly, and orally, denied Petitioner's motion to intervene.

**29.** The concurring opinion predicts that our decision will have a "harmful effect," Conc. op. at 606, "is likely to cause great mischief," *id.* at 609, and "places in jeopardy the finality of every termination judgment," *id.* at 610. We first note that the concurrence attributes a

Upon remand, the circuit court shall conduct a review hearing pursuant to § 5–319 and shall determine anew, as of the time of that hearing, what progress is being made toward the boys' adoption, whether their current placement and circumstances serve their best interests, and what is the appropriate action for the court to take. *Cf. In re Emileigh F.*, 353

---

rationale and conclusion to the Court's decision which we neither express nor mean to imply. By no means are we ruling, as the concurrence intimates, that " § 5–319 does ... permit a court to vacate an enrolled judgment terminating parental rights." *Id.* at 608. Nor are we either explicitly or implicitly intending to "allow even the possibility of" such. *Id.* at 608. While the possibility of the circuit court's vacating an enrolled judgment of guardianship under § 5–319 was an issue expressly left open in our earlier judgment authored by Judge Wilner, *In re Adoption No. 93321055*, 344 Md. 458, 487, 687 A.2d 681, 695 (1997), we do not decide that issue today. Likewise, the Court of Special Appeals, although arriving at a judgment on the issue of Petitioner's right of participation which we now reverse, determined correctly that the issue presented by our earlier caveat was "unnecessary to address ... in the context of this case, in which the only question is whether the natural parent whose parental rights have previously been terminated has a right to participate in the hearing mandated by [§ 5–319]." *In re Adoption No. 11387*, 120 Md.App. 566, 578, 707 A.2d 926, 932 (1998).

The concurring opinion rejects the conclusion that the statutory scheme in question "was ever intended to give the birth parent the status of a party in a § 5–319 hearing." Conc. op. at 606. Yet even under the approach crafted by the concurrence, § 5–319 allows a natural parent who has lost her parental rights to *obtain* party status for a review hearing thereunder—through the court's discretionary grant of permissive intervention. We do not see how the genesis of the natural parent's party status at a § 5–319(f) review hearing portends the different consequences the concurring opinion seems to envision. Indeed we agree with the assessment that the fact "that § 5–319 *does* permit a court to consider reuniting the child(ren) with the parent if it concludes that such reunification is in the child(ren)'s best interest ... does not *require* vacating the termination judgment ... and is not a special right or privilege of the parent." *Id.* at 608 (second emphasis added). That a natural parent in the position of Petitioner enjoys by statute rather than merely by the court's leave, as the concurrence describes, "the rights of a party, including the right to testify, present witnesses, and make argument," *id.* at 609, is neither a guarantee of reunification nor even a presumption that reunification is in the best interests of the child(ren). Rather, reunification is and remains a matter within the plenary discretion of the circuit court. As to what mechanism the circuit court should employ to reunify Petitioner with her children should the court decide that reunification is the appropriate course of action, we express no opinion.

Md. 30, 42–43, 724 A.2d 639, 645 (1999) (remanding case to the District Court of Maryland to conduct review hearing and determine anew as of time of hearing placement for care and custody of child in need of assistance).

***JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND TO REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY MONTGOMERY COUNTY.***

WILNER, Judge, concurring:

I concur in the result reached by the majority, but I respectfully dissent from the majority's conclusion that the requirement of § 5–319(b) of the Family Law Article that notice of a child's status be given to the child's birth parent, either alone or in conjunction with Article 27A, § 4, providing public defender representation for birth parents in hearings conducted under § 5–319, was ever intended to give the birth parent the status of a party in a § 5–319 hearing.

This very case demonstrates the harmful effect of the Court's approach. In April, 1993, the Department of Social Services filed petitions to terminate the parental rights of Clemy and Sam P. with respect to their children, Stephon and Alphonso. Stephon had first been committed to DSS in August, 1990, when he was a year old, and had been in foster care since September, 1991. He was found to be a child in need of assistance in October, 1991. His brother, Alphonso, was committed to DSS at birth and also had been in foster care since September, 1991. Sam P., the father, affirmatively consented to the petition; Clemy simply ignored it. Without objection, the court granted the DSS petition as to both children on October 20, 1993—nearly six years ago. Notwithstanding her failure to participate in the proceeding leading to

the termination of her parental rights, which she had every opportunity to do, Clemy P. continued to litigate. She filed an untimely appeal, which was dismissed, and, in 1994, sought to intervene in a proceeding instituted on behalf of the children under § 5–319. She succeeded in convincing a judge, in December, 1995, to strike the then two-year old judgment terminating her parental rights, thereby placing the children back in limbo. On January 16, 1997, we reversed that order, holding that, by failing to object to the DSS petition, Clemy effectively consented to the petition and that, by virtue of §§ 5–317 and 5–322 of the Family Law Article, that consent was binding on her and could not be revoked. *In Re Adoption No. 93321055*, 344 Md. 458, 687 A.2d 681 (1997).

We noted in our opinion that, if an adoption placement is not made within nine months after entry of the guardianship judgment, if a placement within that period has been disrupted, or if an adoption does not take place within two years, § 5–319 of the Family Law Article requires that DSS (1) file a report and (2) send notice of the child(ren)'s status to the birth parents. That statute, § 5–319(f), also requires the court, on receipt of the guardian's report and every 12 months thereafter, to hold a hearing to review the progress that has been made toward the child's adoption "and to review whether the child's current placement and circumstances are in the child's best interest." Following such a hearing, the court is empowered to "take whatever action the court considers appropriate in the child's best interest."

It may well be, as the majority supposes, that some birth parents are willing to allow, through affirmative consent or failure to object, a termination of their parental rights on the assumption that DSS will arrange for a permanent placement within a relatively short period of time, and that, if such a placement is not so made, they will want to resume a parental status. We recognized that prospect in the earlier appeal and thus left open the issue, which was not then before us, of whether § 5–319(f) would allow a court to reopen or vacate an enrolled judgment of guardianship in such a situation.

I believe that the majority has stretched § 5–319(f) well beyond its intended reach. The requirements of that section need to be viewed in context. The clear and overarching intent of the General Assembly, following, in part, Federal mandates, was to assure that children like Stephon and Alphonso not remain in limbo—that once the decision has been made to terminate the parental rights of their birth parents, DSS move promptly to arrange a permanent and appropriate alternative placement for them. Section 5–319 provides for necessary court supervision over that effort. If appropriate arrangements are not in place within the specified time, DSS must report to the court and explain the circumstances, and the court must then determine whether the existing arrangement remains in the child(ren)'s best interest. The required notice to the birth parents, unless they have waived it, is simply part of that process.

It is clear to me that once a birth parent's parental rights are validly terminated, as Clemy P.'s rights were, that parent is a legal stranger to the child and has no greater rights with respect to the child than anyone else in the world. That, indeed, is the whole point of the termination proceeding—to divorce the parent from the child. The finality of that order is why the Legislature, and this Court through its rules, have taken such pains to assure that parents are provided fair and detailed notice, representation by counsel, and every opportunity to oppose the DSS petition and make their position known.

I would answer the issue reserved in the earlier appeal that § 5–319 does *not* permit a court to vacate an enrolled judgment terminating parental rights. To allow even the possibility of that is to inject uncertainty and non-finality into a judgment that, in the world of judgments, most cries out for certainty and finality. On the other hand, I think that § 5–319 *does* permit a court to consider reuniting the child(ren) with the parent if it concludes that such reunification is in the child(ren)'s best interest. That does not require vacating the termination judgment, however, and is not a special right or privilege of the parent. The court, in a proceeding under § 5–

319, is entitled to consider a variety of arrangements, including placing the child with a birth parent, an adult sibling or other relative, with another acceptable caretaker or intervening foster parent, or any other person who may, at the time and under the circumstances, have an interest in assuming responsibility for the child. The court may modify the conditions of the guardianship over which it retains a continuing jurisdiction, even to the point of permitting a reinvolvement of a birth parent, but it may *not* vacate the termination judgment in order to achieve that result. To the extent that any such prospect is driving the Court's finding of party status, it is, in my view, a wholly unacceptable rationale, one that is likely to cause great mischief.

The purpose of providing notice to the birth parent, it seems to me, is simply to allow the parent to be informed of the existing situation, in order to permit the parent to petition to intervene. The right to notice, however, in my view, is limited to that. The court may consider the petition under Maryland Rule 2–214(b) and decide (1) whether the petitioner has a sufficient interest to be allowed to participate, and (2) whether allowing the intervention will unduly delay or prejudice adjudication of the rights of the original parties. The provision in Article 27A is not inconsistent with that limited right. I expect, quite frankly, that its retention in the law after 1987 may well have been a legislative oversight, but even if that is not the case, I do not believe that it does any more than afford the birth parent assistance in seeking intervention and, if the petition is granted, representation at the hearing.

I agree with the result reached by the majority in this case because I believe that, by granting Clemy's petition for hearing and allowing her to participate, the court effectively allowed her to intervene in the proceeding, and, having done that, it abused its discretion in not permitting her to participate fully as an intervener. Once she was allowed to intervene, she was effectively a party to the proceeding and had the rights of a party, including the right to testify, present witnesses, and make argument.

The danger in the majority's conclusion is not in this case, which has been boluxed up through other rulings. By giving statutory party status to Clemy's position, it places in jeopardy the finality of every termination judgment. I hope that the General Assembly will address the problem promptly and make its desires clear.

Judges RODOWSKY and CHASANOW have authorized me to state that they join in this concurring opinion.