724 A.2d 639

**In re EMILEIGH F.**

**No. 53, Sept. Term, 1998.**

Court of Appeals of Maryland.

Feb. 18, 1999.

Nancy S. Forster, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

C.J. Messerschmidt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen.; Judith L. Fitzgerald, Asst. Atty. Gen., on brief), Baltimore, for respondent.

Argued before BELL, C.J., and RODOWSKY, CHASANOW, RAKER, WILNER, CATHELL, and THEODORE G. BLOOM (Retired, Specially Assigned), JJ.

RAKER, Judge.

We granted certiorari to consider whether litigants in a Child in Need of Assistance proceeding pursuant to MD.CODE

ANN., CTS. & JUD. PROC. § 3–801 *et seq.*[1] have a right to present closing argument. We shall hold that they do.

## I.

This case arises out of an order of the District Court of Maryland for Montgomery County, sitting as a juvenile court, awarding custody of Emileigh F., a child adjudged to be a Child in Need of Assistance (hereinafter CINA), to her Father, John F. Emileigh was born to Danielle W. and John F. on April 5, 1995.

On April 23, 1996, the Department of Health and Human Services filed a petition in the District Court of Maryland for Montgomery County, sitting as a juvenile court, alleging that Emileigh F., the daughter of Petitioner Danielle W., was a CINA.[2] *See* § 3–801.[3] The court appointed counsel to represent Emileigh.

On April 25, 1996, the court adjudicated Emileigh a CINA and committed her to the care of the Department of Health

---

**1.** Unless otherwise indicated, all statutory references herein shall be to MD.CODE ANN., CTS. & JUD. PROC. (1998 Repl. Vol.).

**2.** The petition alleged that Emileigh F. was a child in need of assistance because Danielle W., the child's Mother, and Mr. F., the child's Father, were not able to provide ordinary and proper care and attention to their daughter, Emileigh F.

"Child in need of assistance" is defined in § 3–801(e) as a child who requires the assistance of the court because:
(1) The child is mentally handicapped or is not receiving ordinary and proper care and attention, and
(2) The child's parents, guardian, or custodian are unable or unwilling to give proper care and attention to the child and the child's problems provided, however, a child shall not be deemed to be in need of assistance for the sole reason that the child is being furnished nonmedical remedial care and treatment recognized by State law.

**3.** Section 3–820 provides that after the court holds an adjudicatory hearing, and unless the petition is dismissed or the hearing is waived, the court shall hold a separate disposition hearing. The priorities in making a disposition are the public safety and a program of treatment, training, and rehabilitation best suited to the physical, mental, and moral welfare of the child consistent with the public interest. In

and Human Services (hereinafter DHHS), placing her in the custody of her maternal grandmother, Karen O. On July 10, 1996, in a disposition hearing, the juvenile court ordered that Emileigh be continued in her grandmother's care and that her Mother, Danielle W. participate in regular mental health treatment and therapy.[4] The court held two subsequent review hearings and continued custody of Emileigh with her grandmother and the visitations with Danielle W.[5]

On November 21, 1996, DHHS conducted a family evaluation and sent the report to the juvenile court. The recommendation was that the court "consider reunification of Mrs. W. and her daughter if all of the above mentioned stipulations are appropriately met and that this reunification only occur after the return of Mr. W. and the birth of their first child." The April 10, 1997, DHHS Status Report, Permanent Plan recommendation was to return Emileigh to the care and custody of one of her natural parents.

On April 14, 1997, the court held a review hearing and ordered visitation between Emileigh and John F. and Danielle

---

making a disposition on the petition, the court, *inter alia*, may place the child on probation or under supervision in his own home or in the custody or under the guardianship of a relative or other fit person. The court may commit the child to the custody or under the guardianship of the Department of Juvenile Justice, a local department of social services, the Department of Health and Mental Hygiene, or a public or licensed private agency on terms that the court considers appropriate. The court may order the child, parents, guardian or custodian to participate in rehabilitative services that are in the best interest of the child and the family.

4. The petition noted that John F. was in the Coast Guard, stationed in New Jersey, and that he was providing child support through a military allotment. Since he had not sought custody or visitation, the court orders did not pertain to him. In April, 1997, John F. began regular visitation with Emileigh.

5. Danielle W. moved from Montgomery County to Norfolk, Virginia. She married Nathan W., a member of the United States Navy, in Norfolk. John F. was discharged from the Coast Guard, married Becky, and began working full-time for an ambulance service in New Jersey.

W., as well as another family evaluation. On May 27, 1997, John F. filed in the juvenile court a motion seeking custody of Emileigh. Danielle W. responded, requesting that John F.'s motion be denied.

On June 20, 1997, through the social worker, James Flaherty, and the Permanency Planning Supervisor, Sandra Grijalva, DHHS made the following recommendation:

> The Department believes that both the W. family and the F. family are ready and able to meet Emileigh's needs for safety, stability, and nurturing and that there are no further child welfare issues regarding her care. Mrs. W. has demonstrated increased stability and maturity for handling the stresses in her life and being more available to her children, by using available therapeutic and community resources and by relying on the assistance of her husband. Mr. F. has demonstrated a new sense of responsibility and dedication as Emileigh's parent, and he and his wife have taken all the necessary steps in preparing a home for Emileigh.

> \* \* \* \* \* \*

> Emileigh has two sets of capable parents wanting to provide her a stable, loving home. The Department suggests a period of increasing visitation to help Emileigh adjust to living in a new home and leaving the home of her grandparents, where she has lived most of her life. . . .

On the same day, the Child and Adolescent Forensic Evaluation Services provided a family assessment and recommended that Emileigh be returned to the care and custody of her mother, Danielle W. by September, 1997 so as to provide her with a stable and permanent living situation.

On June 27, 1997, the juvenile court held a further review hearing. The focus of the hearing was the custody of Emileigh. All parties were represented by counsel. The court heard from several witnesses, including James Flaherty, the DHHS social worker, the maternal grandmother who had custody of Emileigh, John F., and Danielle W.

At the conclusion of all the testimony, the court inquired if the attorneys had any further evidence to present. Counsel

responded that there was no further evidence. Counsel for John F. stated that he had no further evidence to present, "[j]ust argument." The court stated as follows:

COURT: Okay. Well, I'm not going to let you all argue. I've heard enough. And I told you that I was going to quit five minutes ago.[6]

Obviously I'm presented with a decision that is difficult to make. But I don't have any trouble making that decision. I find that Mr. F. is a very appropriate person, and I'm going to grant him custody of Emileigh. I'm going to ask the Department to remain involved in the case, to make sure that the transition is smooth. I want Emileigh to continue to have visits with her mother.

The Department said that they had no Protective Service concerns. I have many Protective Service concerns about Emileigh being in the custody of her mother. I'm very concerned about the mother's instability, about her failure to follow through with therapy and parenting classes, the fact that there's no home study that's been done. Uh ... the fact that she doesn't recognize any of the issues that were stipulated to, that were the basis of the CINA finding over a year ago.

Clearly she has improved. Her emotional stability has improved, but I have never believed in the Prince Charming School of Social Work. And I don't believe that marrying someone solves the problems that you have.

I'm very happy that she's made progress in her life, and hopefully she's taking good care of her child, McKenzie, but at this time, I'm going to grant the father custody of the child.

The court awarded custody of Emileigh to her Father, John F.

Danielle W. filed a timely appeal to the Court of Special Appeals. The intermediate appellate court affirmed, holding,

---

6. The court had previously stated:

COURT: ... I'm just going to tell all of you that I'm not going past 4:30. It is Friday, I'm not going to require staff to stay later than that. That's the normal time we stop....

*inter alia*, that because Danielle W. did not object to the failure of the court to receive closing argument, the objection was waived and was not properly before the appellate court. We granted Danielle W.'s petition for writ of certiorari to answer the following questions:

I. Did the Court of Special Appeals err in holding that since parents of children adjudged in need of assistance do not have a constitutional right to counsel in CINA proceedings, they have no right to present closing argument in such proceedings and, therefore, there was no error in denying Petitioner's counsel the right to present closing argument?

II. Should custody of two year old Emileigh F. have been awarded to her father rather than to Petitioner?

## II.

We shall first address Respondent's threshold argument that the issue was not preserved for appellate review because Petitioner never raised it below. Respondent asserts that Mr. F., as the only party who asked for the opportunity to make closing argument, was the only one denied the opportunity to do so. Because Petitioner did not object when the court denied Mr. F. the opportunity to argue, or complain that she was denied the opportunity to argue, her claim is not properly preserved for appeal.

Petitioner counters that the preservation issue is not contained within the certiorari petition, and moreover, if the question were properly before this Court, that the issue was preserved. Petitioner points out that the judge said: "I'm not going to let *you all* argue. I've heard enough." The judge then proceeded immediately to give her ruling. Petitioner argues that the court's ruling clearly applied to Petitioner as well as Respondent and that any objection would have been futile.

We agree with Petitioner and find that the issue is preserved for our review. As we said in *Johnson v. State,* 325 Md. 511, 515, 601 A.2d 1093, 1094 (1992), "[i]t was apparent that his ruling on further objection would be unfavorable to

the defense.... In the circumstances, the absence of a further objection did not constitute a waiver. *See* Md. Rule 4–323(c)."

The instant case is remarkably similar to *Bundy v. State,* 334 Md. 131, 638 A.2d 84 (1994). In that case, the defendant Bundy had not objected to the State's use of peremptory challenges, although his codefendant had objected. *Id.* at 135–36, 638 A.2d at 86–87. The State argued that because Bundy failed to make known to the court the action he desired the court to take, or to object to the action of the trial court, he had not preserved the issue for appeal. *Id.* at 138, 638 A.2d at 88. We concluded that the ruling of the trial judge suggested that Bundy would receive the benefit of his codefendant's objection. *Id.* at 146–147, 638 A.2d at 92–93. Writing for the Court, Judge Chasanow stated:

> [T]he trial judge was 'kind enough' to acknowledge that the codefendant's objection also benefitted Bundy. When the codefendant exclaimed, 'Your Honor, I'm sorry. I thought the State had exhausted her strikes,' the judge explicitly addressed both of the parties in overruling the objection. He immediately stated, '*You each* get four. The State gets eight.' (Emphasis added). Thus, the manner in which the trial judge summarily overruled the objection in this case adequately reflects that he assumed the objection was made on behalf of both defendants. As such, Bundy sufficiently preserved the peremptory challenge issue for appellate review.

*Id.* at 146, 638 A.2d at 92. We noted that immediately after the codefendant's objection the trial court ruled on the objection. *Id.* at 147, 638 A.2d at 92. We held that the issue was sufficiently preserved, reasoning that "[t]he manner of that ruling obviated Bundy's need to join in the objection because the judge acknowledged that the objection inured to Bundy's benefit by expressly directing his ruling ('You each get four. The State gets eight.') to both defendants." *Id.* at 147, 638 A.2d at 92–93.

38

Likewise, in the instant case, the judge ruled immediately after the other party requested closing argument. It was apparent that the ruling applied to all parties. In light of the judge's statement that she would not let anyone argue—"I'm not going to let *you all* argue"—it would have been futile for Petitioner to have objected. The court could hardly have permitted Petitioner closing argument and have denied the other parties the same opportunity. Under these circumstances, Petitioner did not waive her right to closing argument by her failure to interpose an objection.

## III.

Courts around the country are split as to whether there is an absolute right to closing argument in civil cases. It is clear that in criminal cases, in both jury and non-jury cases, it is a violation of the constitutional right to counsel to deny a party the opportunity to make final argument. *Herring v. New York*, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975); *Spence v. State*, 296 Md. 416, 463 A.2d 808 (1983) (stating that opportunity for closing argument in non-jury criminal case is a basic constitutional right guaranteed by the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights). This right exists "even in cases where the evidence appears to be overwhelming." *Holmes v. State*, 333 Md. 652, 658, 637 A.2d 113, 116 (1994).

In civil cases, there are at least three general approaches. Some courts have held that the right is a constitutional right that is absolute, and the denial of that right is reversible error. *See e.g. Pettry v. Pettry*, 706 So.2d 107, 108 (Fla.Dist.Ct.App. 1998) (holding that "due process requires that a party be given the opportunity to present closing argument"); *Nestor v. George*, 354 Pa. 19, 46 A.2d 469, 473 (1946) (holding that "a litigant's right to be fully represented by counsel is an integral part of . . . 'due process of law' "). Other courts have held that the right exists but argument may be precluded by the court when no factual issues exist or when the parties waive or acquiesce in the denial of the opportunity. *See e.g., Aladdin*

*Oil Burner Corp. v. Morton,* 117 N.J.L. 260, 187 A. 350, 350 (N.J.Sup.1936) (holding that in a case exhibiting issues of fact, the right to present analysis and inferences from the evidence is absolute); *Douglass v. Hill,* 29 Kan. 527 (1883) (without indicating the basis of the right, the court held that a party to a law suit has an absolute right to be heard, "not merely in the testimony of his witnesses, but also in the arguments of his counsel"). Finally, some courts have held that in civil, non-jury cases, the matter is entirely discretionary with the court. *See e.g., Fritts v. Fritts,* 11 Md.App. 195, 199, 273 A.2d 648, 650 (1971) (holding that "argument by counsel upon submission of a civil case tried without a jury is a matter within the discretion of the trial court"); *Korbelik v. Staschke,* 232 Ill. App.3d 114, 173 Ill.Dec. 181, 596 N.E.2d 805, 808 (1992) (holding that in a civil proceeding, non-jury, closing argument is a privilege, not a right, and is within the discretion of the court); *Peckham v. Family Loan Co.,* 262 F.2d 422, 425 (5th Cir.1959) (same). *See cases collected* Annot., *Argument of Counsel——Denial——Prejudice* 38 A.L.R.2d 1396–1439 (1989 & 1998 Supp.).

█ Although the question of whether a party has a right to have an opportunity to make closing argument in a CINA proceeding has not been decided by this Court, the Court of Special Appeals considered whether there is a right to closing argument in a civil proceeding directing the defendant to show cause why he should not be held in contempt for failure to pay child support. In *Lee v. State,* 56 Md.App. 613, 624, 468 A.2d 656, 661 (1983), *overruled in part on other grounds, Cherry v. State,* 62 Md.App. 425, 433 n. 2, 489 A.2d 1138, 1142 n. 2 (1985), the court held that a defendant in a civil contempt proceeding cannot be sentenced to a period of incarceration unless his counsel is afforded the right to make closing argument. The intermediate court based this right on the due process clause of the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights. *Id.* at 624, 468 A.2d at 661.

In *State v. Brown*, 324 Md. 532, 597 A.2d 978 (1991), we considered the question of whether, in a criminal case, a defendant has a right to present argument at the conclusion of an evidentiary motion to suppress his confession. We initially noted that the rule set out in *Herring v. New York*, 422 U.S. 853, 858–59, 95 S.Ct. 2550, 2553–54, 45 L.Ed.2d 593 (1975), that the defendant has an absolute right to make closing argument, is limited to the presentation of argument at the *conclusion* of a criminal trial. *Brown*, 324 Md. at 541, 597 A.2d at 982. We observed that the Supreme Court has not as yet recognized an absolute constitutional right to present closing argument at the conclusion of a suppression hearing. *Id.* at 541–43, 597 A.2d at 983. We held, however, that as a matter of Maryland nonconstitutional common law, "when a suppression hearing is held each party ordinarily should be afforded a reasonable opportunity to present argument." *Id.* at 546, 597 A.2d at 985. Judge McAuliffe, writing for the Court, discussed the limits that a trial court appropriately may be set on closing argument:

> The extent of the argument may depend on the complexity of the legal issues, whether evidence has been received, whether there is a conflict in the evidence, and other factors. The trial judge, of necessity, must have great latitude in controlling the duration and limiting the scope of these arguments. The trial judge may limit counsel to a reasonable time, ensure that the argument does not stray unduly from the mark, and terminate argument when continuation would be repetitive or redundant.

*Id.* at 546, 597 A.2d at 985.

As we have indicated, several states have held that there is a right to closing argument in civil cases as well as criminal ones. For example, the Supreme Court of North Dakota held in *Fuhrman v. Fuhrman*, 254 N.W.2d 97, 101 (1977), that "litigants in civil nonjury cases (and, of course, in all criminal and jury cases as well) have a right to have their attorneys make a final argument." The court qualified this absolute right, as we did in *Brown*, noting that this right "may be limited as to content so as to preclude improper argument

. . ." *Id.* In *Aladdin Oil Burner Corp.*, 187 A. at 350, the Supreme Court of New Jersey held that in a contract matter, the trial court's denial of the right to closing argument arbitrarily denied the litigant an absolute right to present to the trier of fact an analysis of the evidence and the inferences to be deduced therefrom.

We now hold that litigants in a CINA proceeding ordinarily have a right, based on nonconstitutional Maryland common law, to have an opportunity to make closing argument. Although our holding is grounded in nonconstitutional law, the Supreme Court's rationale in *Herring,* 422 U.S. at 863, 95 S.Ct. at 2556, is equally applicable:

> Some cases may appear to the trial judge to be simple—open and shut—at the close of the evidence. And surely in many such cases a closing argument will, in the words of Mr. Justice Jackson, be 'likely to leave [a] judge just where it found him.' But just as surely, there will be cases where closing argument may correct a premature misjudgment and avoid an otherwise erroneous verdict. And there is no certain way for a trial judge to identify accurately which cases these will be, until the judge has heard the closing summation of counsel.

(Alteration in original) (footnotes omitted). Among other benefits of argument, counsel's remarks may highlight portions of the testimony considered most favorable or significant, point out inferences to be drawn from the evidence, or explain seemingly irrelevant testimony. The court may limit this right as to content so as to prevent improper argument, and to impose reasonable time limits, but may not deny the right altogether. We have noted that the right to be heard by counsel exists "however simple, clear, unimpeached, and conclusive the evidence may seem, unless [counsel] has waived his right to such argument. . . ." *Yopps v. State,* 228 Md. 204, 207, 178 A.2d 879, 881 (1962).

■ In a CINA dispositional proceeding, the juvenile court has the power to commit a child to the custody or under the guardianship of the Department of Juvenile Justice, a local

department of social services, the Department of Health and Mental Hygiene, or a public or licensed private agency where the child is to be accommodated until custody or guardianship is terminated with approval of the court. § 3–820(c)(1)(ii). An indigent, custodial parent or guardian of the child alleged to be in need of assistance is entitled to the assistance of counsel if the proceeding is under § 3–820. *See* § 3–821. The right to a hearing under these circumstances means more than simply listening to the examination of witnesses. It includes the arguments of counsel, or, if the party is unrepresented, of the party. .

▇ In CINA cases involving a dispositional review hearing, the issues are very often fact-intensive. This is true in the instant case. Although the right to present argument may be limited, it should not have been totally denied. Counsel should have been permitted to present argument to the court. Accordingly, the trial court abused its discretion in totally denying Petitioner the opportunity for closing argument.

## IV.

▇ Petitioner's final argument is that the juvenile court's findings were clearly erroneous and that the court should have awarded custody of Emileigh F. to Danielle W. She argues that "it is impossible to conclude that anyone other than Danielle W. should have been awarded custody of Emileigh F." This argument has no merit.

The evidence before the court was that "Emileigh has two sets of capable parents wanting to provide her a stable, loving home." DHHS Status Report dated June 20, 1997. *See also,* DHHS Child and Adolescent Forensic Evaluation Service Report and Recommendation. Accordingly, pursuant to Maryland Rule 8–604(d) [7], we shall remand the case to the

---

7. Maryland Rule 8–604 provides in pertinent part:
   (d) *Remand.* (1) Generally. If the Court concludes that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment, or that justice will be served by permitting

District Court of Maryland for further proceedings. The District Court, sitting as the juvenile court, shall conduct a review hearing and determine anew as of the time of the hearing the placement for the care and custody of Emileigh F.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND CASE TO THE DISTRICT COURT OF MARYLAND FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY MONTGOMERY COUNTY.*

---

further proceedings, the Court may remand the case to a lower court. In the order remanding a case, the appellate court shall state the purpose for the remand. The order of remand and the opinion upon which the order is based are conclusive as to the points decided. Upon remand, the lower court shall conduct any further proceedings necessary to determine the action in accordance with the opinion and order of the appellate court.