NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| CORDELIA P., | ) |
| | ) Supreme Court No. S-17989 |
| Appellant, | ) |
| | ) Superior Court No. 3KN-18-00081/ |
| v. | ) 19-00011 CN |
| | ) |
| STATE OF ALASKA, DEPARTMENT | ) MEMORANDUM OPINION |
| OF HEALTH & SOCIAL SERVICES, | ) AND JUDGMENT* |
| OFFICE OF CHILDREN'S SERVICES, | ) |
| | ) No. 1861 – November 24, 2021 |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Jason M. Gist, Judge.

Appearances: Olena Kalytiak Davis, Anchorage, for Appellant. M. David Rhodes, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellee.

Before: Winfree, Chief Justice, Maassen, Borghesan, and Henderson, Justices. [Carney, Justice, not participating.]

I.     INTRODUCTION

A mother appeals the superior court's order terminating her parental rights. She contends that the superior court committed reversible error in finding her children in need of aid based on evidence not admitted into the record. She also argues that the

---

\*     Entered under Alaska Appellate Rule 214.

superior court erred in finding that the Office of Children's Services (OCS) made reasonable efforts to reunify the family.

Although the superior court cited some evidence not admitted into the record, sufficient admitted evidence supports the Child in Need of Aid (CINA) findings that the mother abandoned the children and abused substances in a manner that impacted her parenting and placed the children at substantial risk of harm. Further, the superior court did not err in finding OCS made reasonable efforts to reunify the family. We thus affirm the superior court's termination order.

## II. FACTS AND PROCEEDINGS

### A. Facts

Cordelia P.[1] and Rick D.[2] are the parents of Chuck and Cate. Cordelia has three other children who are not subject to these proceedings.

Chuck was born in March 2018. OCS became involved with the family after receiving reports in late September that Cordelia had left six-month-old Chuck and two other children, who were about six and seven years old, at home with no supervision. OCS initially placed Chuck with Rick, but when Cordelia obtained a domestic violence protective order against Rick ten days later, Rick relinquished Chuck to OCS. Further investigation of and interaction with the parents led to concerns that each of the parents was abusing substances. OCS filed an emergency petition for custody and assumed custody of Chuck in early October 2018.

In November OCS received a report from police that Cordelia had telephoned a doctor's office to ask for help with withdrawal symptoms. The report

---

[1]     Pseudonyms are used for all family members to protect their identities.

[2]     Rick is not participating in this appeal.

indicated that she was 26 weeks pregnant and that she refused to go to the emergency room or speak to an obstetrician.

In January 2019 OCS and Cordelia signed a case plan outlining activities she needed to complete before reuniting with Chuck, including managing her mental health and substance abuse issues, developing parenting skills, and maintaining relationships free of domestic violence. She was referred for an integrated mental health and substance abuse assessment, drug testing, and parenting and domestic violence-related education.

Cate was born in February 2019. Cordelia tested positive for opiates the day after Cate's birth. Because Cordelia had not engaged in any services recommended by OCS following Chuck's removal, OCS feared that she had failed to mitigate the substance abuse and safety issues in her home. OCS filed an emergency petition for custody a few days later, and took Cate into custody before she left the hospital.

During the months that ensued, Cordelia continued to struggle with maintaining communication with OCS and working on the elements of her case plan. Although the written case plan was missing some information, in that it did not include contact information for identified service providers and did not list any "next steps" for Cordelia or for OCS, the family's OCS caseworker worked consistently with Cordelia, regularly attempting to contact her, meet with her, and refer her to appropriate services. OCS also gave Cordelia transportation tokens to help her attend meetings and visits on her own, and when she lost her photo identification card, provided verification of her identity as necessary for drug testing. Although Cordelia participated in an initial integrated assessment and some parenting sessions, she failed to follow through with seeking treatment or completing any of the educational referrals.

Cordelia also struggled with consistently visiting Chuck and Cate. OCS arranged for regular visitation, and communicated with Cordelia about visits, but she

often would not show up. Cordelia's very sporadic participation in visitation led OCS to suspend visits multiple times.

In February 2020 OCS developed a new case plan for Cordelia, recording that Cordelia had made "no progress" because she had "not been an active participant in her . . . case." A month later Cordelia told her caseworker that she knew she had not been in contact with OCS for some time, but that she would like to resume working on her case plan and visiting her children. As a result OCS updated its referrals and tried to schedule appointments for Cordelia. OCS also restarted visits between Cordelia and the children, first by videoconference due to the COVID-19 pandemic and then later in person.

In April 2020 OCS petitioned to terminate Cordelia's and Rick's parental rights to Chuck and Cate, alleging that the children were in need of aid pursuant to AS 47.10.011(1) (abandonment), (2) (incarcerated parent), (3) (parent's whereabouts unknown), (4) (medical treatment), (6) (substantial physical harm), (8) (mental injury due to domestic violence), (9) (neglect), and (10) (parental substance abuse). Despite Cordelia's request to resume visitation, she attended only three visits with the children in the following months. In May 2020 she acknowledged to her caseworker that she had still not completed the steps identified in her case plan, and in July, she stopped attending visits with the children.

## B. Proceedings

The superior court held a trial on the petition to terminate Cordelia's and Rick's parental rights over two days in October and November 2020. An attorney for each parent attended, but the parents did not.

OCS presented documentary and testimonial evidence. OCS called two witnesses: the OCS supervisor who first oversaw Cordelia's case and the family's primary caseworker. The supervisor's testimony concerned the reports OCS received

about the family that had prompted the removal of Chuck and Cate. The caseworker's testimony focused on Cordelia's case plan, the many failed attempts to meet with Cordelia and refer her to services, and Cordelia's poor attendance at visits with the children. In addition to that testimony OCS introduced 15 exhibits at trial; all but one were admitted for at least limited purposes. Exhibits containing Cordelia's medical records and the OCS caseworker's notes were admitted without limitation.

The superior court terminated Rick's and Cordelia's parental rights. The court found by clear and convincing evidence that Chuck and Cate were children in need of aid due to abandonment, risk of substantial physical harm, domestic violence, neglect, and substance abuse.[3] The court further found, again by clear and convincing evidence, that the parents had not remedied the conduct and conditions causing the children to be in need of aid, and that OCS made reasonable efforts to reunify Cordelia and Rick with the children. The court also found, by a preponderance of the evidence, that termination of Cordelia's and Rick's parental rights was in the children's best interests. Parts of the order, particularly the court's CINA findings related to domestic violence, risk of substantial physical harm, and neglect, strayed from the record and relied on evidence not admitted.

Cordelia appeals the termination order.

III. **STANDARD OF REVIEW**

"Whether due process rights are violated in a CINA case is a question of law that this court reviews de novo, adopting 'the rule of law that is most persuasive in light of precedent, reason and policy.' "[4] We review findings that a child is in need of

---

[3]     AS 47.10.011(1), (6), (8), (9), (10).

[4]     *Philip J. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 264 P.3d 842, 846 (Alaska 2011) (quoting *Jeff A.C., Jr. v. State*, 117 P.3d 697, 702 (Alaska (continued...)

aid for clear error, reversing only if "a review of the entire record in the light most favorable to the prevailing party" shows "that a mistake has been made."[5] "Whether OCS made reasonable efforts to reunify the family is a mixed question of law and fact"; we review the factual findings for clear error and their application to the CINA statutory requirements de novo.[6]

## IV. DISCUSSION

Before terminating parental rights, the superior court must, among other requirements, find by clear and convincing evidence that the children are in need of aid and that OCS made reasonable efforts to reunify the parents and children.[7] Cordelia argues that the superior court erred with respect to both findings. We disagree and affirm the superior court's termination order.

---

[4]      (...continued)
2005)).

[5]      *Shirley M. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 342 P.3d 1233, 1239 (Alaska 2015); *see also Duke S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 433 P.3d 1127, 1132 (Alaska 2018).

[6]      *Kylie L. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 407 P.3d 442, 448 (Alaska 2017).

[7]      AS 47.10.088(a)(1), (3) (requiring findings by clear and convincing evidence that "the child has been subjected to conduct or conditions described in AS 47.10.011" and that OCS "has complied with the provisions of AS 47.10.086 concerning reasonable efforts"). Cordelia does not appeal the superior court's finding that she failed to remedy the conditions that rendered the children in need of aid, and she does not meaningfully challenge the superior court's best interests finding. AS 47.10.088(a)(2)(A)-(B) (requiring findings regarding parent's failure to remedy conditions placing child at risk), (c) (requiring court to consider child's best interests).

**A.** **The Superior Court Erred In Considering Some Evidence Not Admitted But The Error Is Not Reversible Because Admitted Evidence Supports Finding The Children In Need Of Aid.**

In CINA cases, the superior court must make its "factual findings and legal conclusions . . . based only upon evidence admitted pursuant to legal rules."[8] The Alaska Rules of Evidence "govern all CINA proceedings, unless otherwise specified in the CINA Rules."[9] Only properly admitted evidence may inform a court's factual findings.[10] The court errs if it bases its findings on evidence not admitted.[11] But if the court's findings are nonetheless sufficiently supported by properly admitted evidence, the error is harmless and we will not reverse the superior court.[12]

Cordelia argues that the superior court committed reversible error in considering information not in evidence when making its termination order. She frames the mistake as a violation of her constitutional due process rights. We agree that the superior court improperly considered some information that was not admitted as

---

[8] *Diego K. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 411 P.3d 622, 629 (Alaska 2018).

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *See, e.g.*, *In re Hospitalization of Rabi R.*, 468 P.3d 721, 732-33 (Alaska 2020) (holding consideration of allegations as evidence was harmless error because other evidence in record supported factual findings); *Amy S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 440 P.3d 273, 282-83 (Alaska 2019) (holding any due process violation arising from reliance upon evidence outside of record was harmless because properly admitted evidence supported findings); *Christina J. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 254 P.3d 1095, 1105 (Alaska 2011) (holding consideration of arrest evidence not in record was harmless error because other admitted evidence supported finding).

evidence. This was particularly true of the Court's CINA findings related to domestic violence, the risk of physical harm to the children, and neglect. But we also conclude that the court's CINA findings related to abandonment and parental substance abuse were supported by properly admitted evidence and were not clearly erroneous.[13] Since "only one statutory basis is required to make a CINA finding,"[14] any due process violation arising from the court's consideration of information not admitted as evidence is thus harmless and not reversible error.[15]

Parental rights can be terminated based on abandonment if clear and convincing evidence demonstrates that the parent has consciously disregarded "parental responsibilities toward the child by failing to provide reasonable support, maintain regular contact, or provide normal supervision."[16] Examples include where the parent, without justifiable cause, has made "only minimal efforts to support and communicate with the child"; "failed for . . . at least six months to maintain regular visitation with the child"; or "failed to participate in a suitable plan" for reunification.[17]

The superior court relied on the caseworker's sworn testimony to find abandonment. The caseworker testified that Cordelia often missed her scheduled visits with the children, visiting them only three times in the six months before the last day of trial. Cordelia's last visit with the children was in July 2020, after which she stopped

---

[13]     *See In re Rabi R.*, 468 P.3d at 732; *Amy S.*, 440 P.3d at 282-83; *Christina J.*, 254 P.3d at 1105.

[14]     *Jon S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 212 P.3d 756, 762 (Alaska 2009).

[15]     *Amy S.*, 440 P.3d at 282-83.

[16]     AS 47.10.013(a).

[17]     AS 47.10.013(a)(2)-(4).

attending visits altogether. Overall, Cordelia attended only 15 out of 45 visits between July 2019 and July 2020. The assigned caseworker's testimony also demonstrated Cordelia's lack of meaningful participation in her case plan, which identified services she needed to complete to reunify with the children. While Cordelia underwent an initial integrated assessment and attended preliminary parenting sessions, she did not complete any of the recommended or required services. Cordelia acknowledged in May 2020 that she still had not made meaningful progress on her case plan's requirements. The superior court did not clearly err by concluding that this evidence of Cordelia's conduct constituted minimal efforts to communicate with or support the children, failure to regularly visit the children, and failure to participate in her reunification plan.[18]

Admitted evidence also supports the superior court's substance abuse finding. A court may find a child in need of aid when parental substance abuse substantially impairs the ability to parent, causing a "substantial risk of harm" to the children.[19] OCS removed Chuck from Cordelia's custody due in part to concerns about her drug use and later removed Cate at birth for the same reason. The properly admitted evidence demonstrates that those concerns were well-founded. Cordelia's medical records, which were admitted without limitation, show she abused substances during and after her pregnancies with Chuck and Cate. Indeed, in October 2019, Cordelia acknowledged to a provider that she had been "[a]ddicted to heroin [for the] past six years." Especially concerning is a report indicating that when Cordelia was pregnant with Cate, she contacted her doctor about difficulty with withdrawal symptoms, but refused the doctor's recommendation to consult with her obstetrician or go to the

---

[18]     *See Steve H. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 444 P.3d 109, 113-14 (Alaska 2019) (holding that failure to regularly visit child, comply with case plan requirements, and communicate with OCS constituted abandonment).

[19]     AS 47.10.011(10).

emergency room. The superior court's finding that the children were in need of aid based on evidence of Cordelia's sustained substance abuse during and after her pregnancies,[20] and based on her statements regarding substance abuse to medical providers,[21] is not clearly erroneous.

**B.     The Superior Court Did Not Err In Finding OCS Made Reasonable Efforts To Reunify Cordelia With Chuck And Cate.**

Terminating parental rights also requires a finding by clear and convincing evidence that OCS made reasonable efforts to reunify the family.[22] Reasonable efforts entail identifying services for the parent; actively offering and referring the parent to those services; and documenting the Department's actions.[23] OCS's primary consideration throughout is the children's best interests.[24] For any given case, the court must consider whether OCS's efforts "were reasonable in light of the surrounding circumstances."[25] The efforts, however, "need not be perfect."[26] Circumstances such as

---

[20]     *See Barbara P. v. State, Dep't of Health & Soc. Servs.*, *Off. of Child.'s Servs.*, 234 P.3d 1245, 1259 (Alaska 2010) (affirming finding that child was in need of aid when parent used illegal substances during and after pregnancy, impairing her ability to parent and harming child).

[21]     *Payton S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 349 P.3d 162, 169-70 (Alaska 2015) (affirming finding that children were in need of aid due to parental substance abuse based in part on parents' admissions).

[22]     AS 47.10.088(a)(3).

[23]     AS 47.10.086(a)(1)-(3).

[24]     AS 47.10.086(f).

[25]     *Barbara P.*, 234 P.3d at 1262.

[26]     *Sylvia L. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 343 P.3d 425, 432 (Alaska 2015).

the "parent's substance abuse history, willingness to participate in treatment," cooperation, and the services provided over time determine whether OCS's efforts are reasonable.[27]

We acknowledge that OCS's case planning in this matter was not perfect. The initial case plan lacked important information, such as Cordelia's "protective factors," contact information for service providers, and next steps for OCS and Cordelia to take. We further acknowledge that there appears to have been a lapse in the updating of Cordelia's case plan over time.

Despite these deficiencies, the surrounding circumstances support the finding that OCS made reasonable efforts. OCS contacted Cordelia over 100 times to discuss visits and her case plan. Caseworkers tried repeatedly to discuss recommended services with Cordelia and updated her referrals numerous times. OCS provided Cordelia with transportation tokens and verified her identify with her provider in order to facilitate her taking part in services. Cordelia nonetheless acknowledged that she had not completed her case plan. More recently, when the COVID-19 pandemic presented special challenges, OCS continued to refer Cordelia to services and scheduled visits for her with her children over videoconference until in-person visits were permitted to resume. Cordelia stopped all visits with the children in July 2020 having never regularly attended them. We have held that similar efforts to develop a case plan, refer for services, schedule visits, and maintain contact with an unresponsive parent were reasonable.[28] The superior court thus did not err by finding that OCS made reasonable efforts to reunify Cordelia, Chuck, and Cate.

---

[27]     *Id.*

[28]     *Id.* at 432-33; *see also Casey K. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 311 P.3d 637, 647 (Alaska 2013) (affirming finding of reasonable efforts based on OCS's history of services offered and parent's failure to cooperate).

## V.     CONCLUSION

The superior court's order terminating Cordelia's parental rights is AFFIRMED.